In re GRAND JURY PROCEEDINGS
OF GRAND JURY NO. 81–1
(MIAMI).

Misc. No. 87–1.

United States District Court,
S.D. Florida.

Argued Sept. 15, 1987.

Decided Sept. 21, 1987.

Terence J. Anderson, Coral Gables, Fla., Patricia Williams, Miami, Fla., Robert S. Catz, Cleveland, Ohio, William G. McLain, John W. Karr, Karr, Lyons & McLain, Washington, D.C., for Judge Alcee L. Hastings.

Alan I. Baron, Sp. Counsel, Janice E. Cooper, Robert B. Levin, Patricia Wynn, Asst. Sp. Counsel, M. Elaine Mielke, Gen. Counsel, U.S. House of Representatives, Committee on the Judiciary, for the House.

Leon Kellner, U.S. Atty., Miami, Fla., Jo Ann Farrington, Atty., U.S. Dept. of Justice, Washington, D.C., for U.S.

BUTZNER, Senior Circuit Judge, sitting by designation:

These proceedings raise three issues. First, whether the United States House of Representatives Committee on the Judiciary, when conducting an investigation pertaining to the impeachment of an official, is entitled to receive the record of a grand jury that indicted the official. Second, whether the official is entitled to the grand jury record at this stage of the proceedings. And third, whether the record should be released to the public.

The court concludes that a copy of the record should be delivered to the Committee. As to the official's entitlement, control over the timing and extent of discovery in impeachment proceedings is ancillary to the power and trial of impeachment that the Constitution vests in the Congress. Therefore, an official's request for disclosure of the grand jury record for use in preparation for impeachment proceedings must be addressed to the appropriate committees of Congress. Finally, no need has been shown for public disclosure sufficient to justify an exception to the general rule of grand jury secrecy prescribed by Federal Rule of Criminal Procedure 6(e)(2).

I

In 1981, a grand jury indicted Judge Alcee Hastings for conspiring with William Borders, Jr., to solicit a bribe to influence a judicial decision. *See United States v. Hastings*, 681 F.2d 706, 707 (11th Cir.1982). In separate trials, Borders was convicted and Judge Hastings acquitted of their respective charges. Shortly after his acquittal on the criminal charges in 1983, a complaint was filed against Judge Hastings with the Judicial Council of the Eleventh Circuit based upon the same matters which had led to the indictment.

A special investigatory committee of the council was formed pursuant to § 372(c)(4) of the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980, 28 U.S.C. § 372(c)(4). As part of its investigation, the council committee petitioned the district court for access to the record of the grand jury that had indicted Judge Hastings. Judge Hastings opposed this petition and in the alternative asked that he and his counsel be given access to any

records made available to the committee or that they be made public.

The district court granted the council committee access to the record, subject to conditions of confidentiality, and denied access to Judge Hastings and the public. *In Re Petition to Inspect Grand Jury Materials*, 576 F.Supp. 1275 (S.D.Fla.1983). Judge Hastings appealed only the order giving the council committee access to the record, and the court of appeals affirmed. *In Re Petition to Inspect and Copy Grand Jury Materials*, 735 F.2d 1261 (11th Cir.1984).

On September 2, 1986, the Judicial Council of the Eleventh Circuit certified to the Judicial Conference of the United States, as provided by 28 U.S.C. § 372(c)(7)(B), its conclusion that Judge Hastings had engaged in conduct which might constitute grounds for impeachment. The Judicial Conference considered the report of the council committee, the records and exhibits compiled by that committee, and a "Statement and Provisional and Preliminary Report" filed by Judge Hastings. It concurred in the determination that impeachment might be warranted, and in turn certified this conclusion to the House of Representatives on March 17, 1987, in accordance with 28 U.S.C. § 372(c)(8). On March 23, 1987, House Resolution 128 was introduced, providing for the impeachment of Judge Hastings. Both the House Resolution and the Certificate of the Judicial Conference were referred to the House Committee on the Judiciary.

On July 15, 1987, the Committee on the Judiciary requested the district court to deliver "all the records, transcripts, minutes and exhibits of the grand jury ... which indicted Judge Hastings." The Committee declared these materials to be "essential in order to make our inquiry complete," and undertook to hold and use them in accordance with certain confidentiality procedures it had established.

The chief judge, proceeding *ex parte* in accordance with Fed.R.Crim.P. 6(e)(3)(D) and Advisory Committee Notes, on August 5, 1987, authorized release of the grand jury materials to the Committee on the Judiciary, subject to the agreed upon confidentiality procedures. The chief judge immediately sent a copy of his order to Judge Hastings's counsel. Judge Hastings moved to stay the order on August 10, and the Committee agreed not to seek or accept the grand jury materials pending resolution of Judge Hastings's objections.

Judge Hastings requests 1) that the House of Representatives not be given the materials until certain constitutional questions have been answered and certain procedural requirements have been met; 2) that senators, as potential judges of his case, not be permitted to see the record; 3) that he and his counsel be granted access to the materials; and 4) that the entire grand jury record be made public forthwith.

## II

Federal Rule of Criminal Procedure 6(e)(2) provides that matters occurring before the grand jury are to be kept secret, except in certain specific circumstances listed in 6(e)(3). The reasons for secrecy are fully discussed in *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). Though not absolute, the rule's importance dictates that exceptions not be casually created or expansively interpreted. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958).

The Committee asserts that three independent sources of authority justify delivery of the grand jury record: first, the power of impeachment that the Constitution vests in the House of Representatives; second, Federal Rule of Criminal Procedure 6(e)(3)(C)(i); and third, the inherent power of a district court to disclose grand jury records.

The court will first analyze the grounds for disclosure advanced by the Committee and then turn to Judge Hastings's objections to disclosure.

The Constitution specifies that the "House of Representatives shall ... have the sole Power of Impeachment" and that the "Senate shall have the sole Power to

try all Impeachments." Art. I, §§ 2 and 3. The Necessary and Proper Clause gives Congress the right to employ the means necessary to implement these powers. Art. I, § 8.

Chief Justice Marshall stated in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819):

> [T]he sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.

■ Chief Justice Marshall's reasoning applies to these proceedings. To decide whether articles of impeachment should be preferred is within the scope of the constitutional authority conferred on the House. Examination of information that caused the grand jury to indict Judge Hastings is, in the words of the Chief Justice, a means which is "plainly adapted to that end." Dictum in *Kilbourn v. Thompson*, 103 U.S. (13 Otto) 168, 190, 26 L.Ed. 377 (1880), supports the conclusion that the power to impeach includes the power to obtain evidence:

> The House of Representatives has the sole right to impeach officers of the government, and the Senate to try them. Where the question of such impeachment is before either body acting in its appropriate sphere on that subject, we see no reason to doubt the right to compel the attendance of witnesses, and their answer to proper questions, in the same manner and by the use of the same means that courts of justice can in like cases.

During the impeachment investigation of President Nixon a grand jury recommended that its report be sent to the Committee on the Judiciary. The Committee on the Judiciary also requested it. The district court, treating the report as a presentment, granted the recommendation and request. The court of appeals denied an application for a writ of mandamus that sought to prevent disclosure. *See In re Report and Recommendation of June 5, 1972 Grand Jury*, 370 F.Supp. 1219 (D.D.C.) *mandamus denied sub nom. Haldeman v. Sirica*, 501 F.2d 714 (D.C.Cir. 1974). Although a record of all matters occurring before a grand jury may be more comprehensive than a presentment, this precedent supports the present request.

The House of Representatives is also entitled to obtain grand jury records by virtue of the Speech or Debate Clause of article I, section 6. *See In re Grand Jury Investigation of VenFuel*, 441 F.Supp. 1299 (M.D.Fla.1977). The Supreme Court has interpreted this clause to grant Congress investigatory power as long as the investigation in question falls within the "legitimate legislative sphere" of Congress. *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975). The Court defined legislative activities that are embraced by the Speech or Debate Clause as follows in *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972):

> [T]hey must be an integral part of the deliberative and communicative process by which Members [of Congress] participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

A congressional investigation relating to the impeachment of a federal judge satisfies this definition.

■ The Committee's second ground for obtaining the record is based on Fed.R. Crim.P. 6(e)(3)(C)(i), which authorizes a court to make disclosures "preliminarily to or in connection with a judicial proceeding." There can be little doubt that an impeachment trial by the Senate is a "judicial proceeding" in every significant sense and

that a House investigation preliminary to impeachment is within the scope of the Rule.

It is apparent from the text of the Constitution that the framers considered impeachment to be judicial in nature. Article III, section 3, provides: "The trial of all Crimes, except in Cases of Impeachment, shall be by Jury...." The exception indicates that impeachment proceedings would be included under the label "trial of all crimes," unless explicitly excluded. The terms used in reference to impeachment in Article I—"cases of impeachment," "try," "convicted," and "judgment"—all testify to its judicial character. The fact that senators rather than Article III judges decide the case does not make it any less judicial; it merely points to a jurisdictional choice made by the framers for political and historical reasons. In speaking of the exceptions to the doctrine of the separation of powers between the three branches of government, the Supreme Court observed, "The Senate also exercises the judicial power of trying impeachments, and the House of preferring articles of impeachment." *Kilbourn*, 103 U.S. (13 Otto) at 191 26 L.Ed. 377 (dictum). The court therefore concludes that Rule 6(e)(3)(C)(i) embraces impeachments.

The third ground asserted by the Committee needs no extended discussion. The inherent power of a district court to disclose grand jury records is established as the law of this circuit by *In Re Petition to Inspect and Copy Grand Jury Materials*, 735 F.2d 1261, 1268 (11th Cir.1984). In that case the court of appeals affirmed an order of the district court disclosing the same grand jury record to the circuit council's investigating committee.

The court concludes that each of the three grounds pressed by the Committee for disclosure justifies its request for the grand jury record, unless Judge Hastings's objections establish an exception to the principles on which the Committee request rests.

### III

Judge Hastings asserts that it was improper for the Committee to request the grand jury materials on an *ex parte* basis without giving him prior notice of its intention to do so.

■ The court holds that the Committee had no obligation to provide such notice, in light of the explicit authorization found in Rule 6(e)(3)(D) for *ex parte* proceedings when the government is the party seeking grand jury materials. The chief judge, however, immediately sent copies of the *ex parte* order to Judge Hastings and to the United States attorney who has custody of the record. In response to Judge Hastings's motion to stay the order, the parties agreed that the record would not be sent to the Committee pending the court's disposition of the motion. All parties have been given ample notice of the present hearing and an opportunity to be heard. The objection based on the omission of notice by the Committee is no bar to disclosure.

Judge Hastings also argues that the record should not be released to the Committee until the court determines whether the terms of an earlier order making the record available to other parties have been violated.

The court perceives no need to make that determination. The conduct of parties not associated with the Committee can have no bearing on the Committee's request.

■ Turning to more substantive issues, Judge Hastings insists that the record should not be disclosed to the Committee until it submits an application that demonstrates, in his words, the following:

1. The House or, at a minimum, the Committee or the Subcommittee to which any disclosure is to be made had itself determined on the basis of the record before it that the impeachment of a federal judge on an article that realleged charges that were tried to and rejected by a jury is consistent with the principles embodied in the Double Jeopardy and Speedy Trial provisions of the Constitution (U.S. Const., amend. V).

2. Why and what further disclosure of grand jury material is necessary in view of the fact that a committee of five

judges has already examined the entire grand jury record, and, after that screening, has itself compiled the record that the Judicial Conference of the United States ... certified to enable the House to determine whether consideration of impeachment was warranted.

3. The Committee has adopted a plan that evidences an appropriate respect for the interests of the grand jury and those of the executive and judicial branches, interests that would be undermined by the requested interbranch disclosure, by limiting dissemination of grand jury materials to those representatives and staff who have a need for the information in order to perform their functions properly—*e.g.*, to the members of the Criminal Justice Subcommittee and the special counsel until such time as it reports to the Committee, to the members of the Committee to the extent necessary to enable them to review the Subcommittee's report, and to the other members of the House to the extent necessary to enable it to consider any report the Committee may submit.

In amplification of the first issue, Judge Hastings argues that the Double Jeopardy Clause and Speedy Trial requirements of the fifth and sixth amendments bar impeachment because of his acquittal on criminal charges arising out of the same incident. Counsel for the Committee has submitted a brief controverting Judge Hastings's position. Both parties acknowledge, however, that these issues cannot be decided in this proceeding.

The court agrees that it should not decide the defenses of double jeopardy and denial of a speedy trial. Pleas of double jeopardy and denial of a speedy trial are pleas in bar that must be addressed to the forums that are charged with the constitutional duty of conducting impeachments. The issue, therefore, is whether the court can condition the Committee's receipt of evidence on the Committee's prior determination of these pleas.

A court cannot restrain the Senate from sitting as a court of impeachment. *Mississippi v. Johnson,* 71 U.S. (4 Wall.) 475, 501,

18 L.Ed. 437 (1866) (dictum). Nor can a court review the Senate's decision. *Ritter v. United States,* 84 Ct.Cl. 293, 300 (1936). Furthermore, a court cannot enjoin a congressional subpoena duces tecum when the Congress seeks information to enable it to discharge a legitimate function. *Eastland,* 421 U.S. at 509–11, 95 S.Ct. at 1824–25. Respect for the constitutional separation of powers between the judicial and legislative branches of government, which undergirds these decisions, mandates also that a court must not prescribe at what stage of impeachment proceedings pleas in bar should be decided.

■ The second condition which Judge Hastings would have the court impose is a more specific demonstration of particularized need for disclosure.

In his letter requesting the record, the Chairman of the Committee on the Judiciary stated:

> We consider a review of the complete record of the grand jury that indicted Judge Hastings to be essential in order to make our inquiry complete. The inquiry might not reach the degree of thoroughness necessary to ensure public confidence that justice had been done without such a review.

The Chairman's letter must be considered in context with other disclosures of all or a part of this grand jury record. Pursuant to *Dennis v. United States,* 384 U.S. 855, 875, 86 S.Ct. 1840, 1852, 16 L.Ed.2d 973 (1966), Judge Hastings's counsel had access to the grand jury testimony of witnesses who testified for the government at the criminal trial. The investigating committee and the council of the Eleventh Circuit had access to the record because it was deemed to be relevant to the inquiry about Judge Hastings's conduct. *See In Re Petition to Inspect and Copy Grand Jury Materials,* 735 F.2d 1261, 1272–73 (11th Cir.1984). The Judicial Conference of the United States considered the report of the investigating committee before certifying its recommendation to the House.

It is within the province of the House Committee to review all of the information, including the grand jury record, on which

the council committee, the Council, and the Judicial Conference relied in discharging their respective duties imposed by the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980. The court, therefore, holds that the request of the Chairman of the Committee on the Judiciary satisfies the standard of particularized need for disclosure of the record. *See Procter & Gamble Co.*, 356 U.S. at 683, 78 S.Ct. at 987.

■ Judge Hastings's third objection to disclosure is the insufficiency he perceives in the confidentiality procedures adopted by the Committee. He is concerned that members of the House and Senate may have access to the record before they are called upon to exercise the powers of impeachment and trial. He recognizes that the court cannot limit the Committee's power to disclose the record after the Committee has received them. Therefore, he seeks to deny disclosure until the Committee modifies its procedures to permit disclosure only to the extent necessary for the Committee to perform its legitimate functions.

The court declines to impose the condition that Judge Hastings requests. Ancillary to the sole power of impeachment vested in the House by the Constitution is the power to disclose the evidence that it receives as it sees fit. Again, recognition of the doctrine of separation of powers precludes the judiciary from imposing restrictions on the exercise of the impeachment power. The court cannot review or amend the voluntary restriction that the Committee has placed on disclosure. Nor can the court indirectly compel the Committee to amend its confidentiality procedures by withholding disclosure. The same principles that deny a court the power to enjoin a congressional subpoena duces tecum when Congress is engaged in a legitimate function apply here. *See Eastland,* 421 U.S. at 501–03, 95 S.Ct. at 1820–21.

In any event, limiting disclosure to the Committee would be inappropriate. All members of the House are entitled to examine the record in exercising the power of impeachment. Also, the Constitution provides that the Senate must act on "oath or affirmation." Art. I, § 3. The oath requires each Senator to swear or affirm that he "will do impartial justice according to the Constitution and laws...." Senate Manual 177 (1984). The court will not assume that Senators will disregard their oath by basing their decision on evidence that is not introduced at the impeachment trial.

## IV

■ As previously mentioned, Judge Hastings has had access to the grand jury testimony of witnesses who testified against him in the criminal trial. His request for further access must be addressed to the Committee or the Senate. Ancillary to the sole power of impeachment vested in the House and the power to try impeachments vested in the Senate is the power to govern the timing and the extent of discovery that will be allowed. The doctrine of separation of powers that denies a court the power to enjoin impeachment also denies a court the power to dictate how the impeachment proceedings shall be conducted. *See Mississippi v. Johnson,* 71 U.S. (4 Wall) at 501, 18 L.Ed. 437 (dictum).

The order of August 5, 1987, incorporates the confidentiality procedures adopted by the Committee. These procedures do not expressly allow Judge Hastings access to the record. So there will be no misunderstanding, nothing in the order that will be entered nor in the order of August 5, 1987, shall preclude the Committee from disclosing the record to Judge Hastings.

■ The court also declines to order public release of the record. Rule 6(e)(2) imposes a general rule of secrecy on matters occurring before the grand jury. Judge Hastings has not shown a particularized need for public release sufficient to justify an exception to this general rule. The court, however, on Judge Hastings's motion has unsealed the papers filed in this proceeding, other than the grand jury record, and conducted the hearing in open court. *See* Rule 6(e)(5) and (6).

## V

Counsel for Judge Hastings indicated that an appeal will likely be taken from any adverse order and asked for a stay pending appeal. Counsel for the Committee opposed the request for a stay.

Although the court appreciates that the Committee rightly wishes to proceed with dispatch, it realizes that denial of a stay will impede an effective appeal and virtually deprive an appellate court of an opportunity to review these proceedings. Borrowing from Federal Rule of Appellate Procedure 41(a), the court will grant a stay of 21 days from the date of the entry of this order. This will allow time for an appellate court to either extend or dissolve the stay.